JARRATT MORFORD AND OTHERS *vs.* JOHN PECK.

It is a well settled rule that counsel will not be permitted in cross-examining a witness to state the contents of a letter, and ask the witness whether he wrote such a letter, without having first shown the letter to the witness for recognition.·

In the English courts an exception is made to the rule where the witness is a party, but this exception has not been adopted by the courts of this country.

Where the court makes a ruling upon the admissibility of evidence, upon objection taken to a particular portion of it, the party objecting has a right to know precisely what evidence is received and what rejected.

Certain portions of the testimony of a witness were objected to on the ground that they were hearsay, and the counsel objecting requested the court to instruct the jury particularly as to what was admitted and what rejected. The judge merely instructed them to reject all statements not made on the witness's own knowledge. Held to be ground for granting a new trial.

It is the duty of the court to rule upon all matters of law, even if it involves the necessity of deciding upon the proof of facts.

A seller of goods, claiming that they had been fraudulently purchased, brought replevin for a portion of them in the possession of a third person who was claimed to have taken them of the buyer with knowledge of the fraud. Held that he had not affirmed the sale by bringing an action of assumpsit against the buyer, before the replevin suit, for the price of a portion of the goods which the buyer had sold, and that the reason for bringing the action might be shown.

Fraud may be inferred from circumstances.

REPLEVIN for a quantity of flour; brought to the Court of Common Pleas of Fairfield County, and tried to the jury on the general issue, with notice, before *Fyler, J.* Verdict for defendant, and motion for a new trial by the plaintiffs. The case is sufficiently stated in the opinion.

*G. Stoddard* and *S. Tweedy,* in support of the motion.

*W. F. Taylor* and *J. H. McMahon,* with whom was *J. S. Turrill,* contra.

LOOMIS, J. This is an action of replevin to recover sixty-seven barrels of flour purchased of the plaintiffs by one Hill, with the fraudulent design not to pay for the same, of which the defendant, it is claimed, had such knowledge as to make the contract also voidable against him. The defendant

obtained a verdict in his favor, and the plaintiffs, by motion for a new trial, bring the case to this court for the revision of sundry rulings of the court below in the matter of admitting and rejecting evidence and in the charge to the jury.

The points made are so numerous we will refer only to such rulings as we consider erroneous.

1. Upon the cross-examination of one of the plaintiffs, sworn as a witness, the defendant's counsel, against the objection of the plaintiffs, was permitted by the court to ask the witness "if he did not write a letter to Hill and therein agree to give ten days credit." Also the court, against a like objection, permitted the same counsel to read from a letter held in his hand, without first proving or identifying it, and to ask the same witness "if he did not stipulate in accordance with the language of the letter read from." After these questions had been answered the letter referred to was offered by the defendant's counsel, and the witness was further examined relative to the contents. The rulings referred to were in direct violation of the well settled rule laid down in Green-leaf's Evidence, § 463, that "counsel will not be permitted to represent in the statement of a question the contents of a letter, and to ask the witness whether he wrote a letter to any person with such contents, or contents to the like effect, without having first shown to the witness the letter, and having asked him whether he wrote that letter, and his admitting that he wrote it; for the contents of every written paper, according to the ordinary and well established rules of evidence, are to be proved by the paper itself, and by that alone, if it is in existence."

This rule is enforced quite generally in the courts of the United States. The English courts hold firmly to the same general rule, in the case of witnesses who are not parties to the suit, but make an exception where the party appears as a witness to support his own cause, and hold that he may be cross-examined as to the contents of an affidavit or letter not produced. *Sladden* v. *Sergeant*, 1 Fost. & Fin., 322; *Farrow* v. *Bloomfield*, id., 653. This exception however has not been recognized by the courts of this country, and we see no suffi-

cient reason for its adoption. The error of the court, as a ground for a new trial, is in great measure obviated by the fact that the contents referred to in the first question contained merely the statement of what seems to have been a conceded fact, that the sale was on ten days' credit. In the second question however it is not stated what was read from the letter; it may have been some other matter not conceded. But the letter itself was finally produced, and the witness had an opportunity to examine, explain, and testify concerning it, so that the only injustice actually done was to the witness who was unfairly examined as to the contents of a writing not first shown to him, which may have prejudiced him and his cause with the jury.

2. In two instances, after certain testimony mentioned in the motion had been offered, the defendant objected to certain portions of it as matter which the witnesses had testified to from hearsay and not from their own knowledge; and the court merely instructed the jury to reject all statements not made on the witnesses' own knowledge. In one of the instances the plaintiffs particularly requested the court to specifically instruct the jury what particular evidence was to be thus excluded; but the court did not comply with the request.

As the matter of admitting or rejecting evidence is within the exclusive province of the court and not of the jury, it should not have been left to them to say what evidence should be excluded, and the party has a right to know, where he has taken his objection with particularity, precisely what evidence is received and what rejected.

The case falls within the principle of *Robinson* v. *Ferry*, 11 Conn., 460, where certain evidence was objected to, which was clearly admissible if it was part of one entire conversation, on which the plaintiff relied, but which was left in uncertainty by reason of the indistinct recollection of a witness offered to prove it. The court permitted the evidence to go to the jury and be considered by them, if they should find it to have been a part of the entire conversation relied upon. This course was held to be erroneous by this court. CHURCH,

J., in giving the opinion, (p. 463,) said:—"Although it is the privilege and prerogative of the jury to determine all matters of fact which are involved in the issue submitted to them, yet it is equally the exclusive duty of the court to determine all matters of law, even if they involve the necessity of deciding upon the truth of facts."

3. As one ground of defence to this action it was shown by the defendant that the plaintiffs, before issuing the writ of replevin in this case, caused a writ of attachment in an action of assumpsit to be brought against Hill to the Superior Court, demanding one thousand dollars damages, which writ was signed by John S. Turrill, as commissioner of the Superior Court, who was also an attorney at law. This suit was still pending in court at the date of the trial in this case. Upon these facts the defendant claimed that the action in assumpsit was brought to recover the price of the same flour for which the replevin was brought, and that thereby the plaintiffs had ratified and confirmed the entire sale as made to Hill. To rebut this evidence and to obviate its legal effect one of the plaintiffs, who had personally procured both the writs to be issued, was offered as a witness, and was asked the following question, which upon the defendant's objection was excluded by the court:—"What steps, if any, did you take at the same time you procured this writ to be issued, to procure by action the recovery of the flour which is the subject of this suit from Mr. Peck?" But after rejecting this, the court admitted the next question:—"Did you or did you not direct Mr. Turrill at the time he brought the assumpsit suit, also to bring replevin against Mr. Peck for this flour?" The apparent object of both questions was the same, though the last was more direct and explicit, and both were equally admissible. The admission of the last, if as we assume it covered the same ground, prevented any injustice to the plaintiff, and so far removes the ground for a new trial on that account. But subsequently the court, upon the defendant's objection, excluded the question, "Did you direct for what this assumpsit suit should be brought?" The object of this inquiry was doubtless to show, what was claimed on the trial, as appears

from the charge of the judge, that some of the flour had been sold by Hill before the contract was avoided, and which therefore could not be recovered in the action of replevin, and that the assumpsit suit was brought and prosecuted for the mere purpose of recovering from Hill the price of the flour thus sold by him. The judge in the tenth point of his charge instructed the jury as follows:—"If you find that a certain portion of the flour sold by the plaintiffs to Hill had been sold by him to parties other than the defendant, and could not be replevied, and that prior to the bringing of this suit of replevin the plaintiffs had issued an attachment in an action of assumpsit, the effect of the writ and attachment would depend upon the intention with which it was issued, and if you are satisfied from the evidence that the object was merely to recover the proceeds of the portion of the flour which had been disposed of and could be reached in no other way, then the plaintiffs did not by the attachment and suit affirm the contract of sale, and can maintain replevin for the residue of the flour which was found in the possession of the defendant."

No fault is found by either party with this part of the charge, but in the light of the above proposition it is very obvious that the plaintiffs ought to have had the benefit of an answer to the above question in order to bring their case within the controlling distinction so clearly stated.

4. The last point which we purpose to discuss is contained in the first proposition of the charge to the jury, who were told that the plaintiffs must prove the fraud, and that it could not be inferred.

The court probably intended by this merely to convey to the jury the idea embodied in the maxim so often quoted, that "the law never presumes fraud." The maxim itself is liable to mislead a jury, and requires explanation to the effect that the law in its charitable estimate of human nature never supposes a person guilty of a thing so base until it is proved; but it must never be taken to mean that the law will not imply fraud from facts and circumstances where it is not directly proved, or will not in some cases even find constructive fraud

where no actual fraud is proved. The above maxim embodies a principle similar to that which obtains in criminal cases, that the law presumes every one innocent until proved guilty; but it would hardly do to say that guilt can never be inferred, for in most criminal cases, especially of a felonious character, the conclusion of guilt must be arrived at, if at all, by the aid of indirect evidence, by inference from other facts and circumstances.

We think the judge made the maxim more misleading by substituting "inferred" for "presumed." The former is a stronger word than the latter, (in connection with the words "can not,") for the purpose of excluding indirect evidence. To infer is derived from the Latin *inferre*, compounded of "*in*" from, and "*ferre*" to carry or bring, and its strict meaning is to bring a result or conclusion from something back of it, that is, from some evidence or data from which it may be logically deduced. But to presume is from the Latin *præsumere*, consisting of "*præ*," before, and "*sumere*," to take, and signifies to take or assume a matter beforehand, without proof—to take for granted.

We do not suppose jurors would weigh these words in the light of such a verbal criticism, but we know of no better way to illustrate the substantial difference in the impression which these two words are calculated to make on the common mind.

We think this first proposition standing by itself was calculated to mislead the jury. It is however possible that the subsequent parts of the charge may have corrected their first erroneous impressions. The third and fourth points of the charge show that the judge in his own mind had no such idea as that fraud could not be inferred from circumstances. It is not necessary to decide whether on the whole we would grant a new trial on this ground alone. The other grounds referred to are sufficient and a new trial is advised.

In this opinion the other judges concurred.